IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WJM HOME CARE, LLC; EM HOME CARE, INC.; UZOMA CARE CORP; SANDERS SENIOR CARE, INC.; DIERCKS SENIOR CARE, LLC; WEBER HOME CARE SERVICES, LLC; SOLICITUDE, INC.; REVERE CARE, INC.; BUCKSKIN 903 VENTURES, LLC; GMW SOLUTIONS, LLC; RSGR, LLC; RIVER PHOENIX HEALTH, LLC; GEOCARE, INC.; TAILORED HOME CARE, LLC; MECK, LLC; DITP BUSINESS VENTURES, INC.; AUBBY, INC.; HOME CARE FOR SENIORS MASSACHUSETTS, INC.; COMMONWEALTH SENIOR CARE, LLC; and ESSEX COUNTY SENIOR CARE, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> HOME INSTEAD, INC., <br><br> Defendant. | **8:25CV654** <br><br><br> **MEMORANDUM AND ORDER** |

In this purported diversity case, *see* 28 U.S.C. § 1332(a)(1), plaintiffs WJM Home Care, LLC; EM Home Care, Inc.; Uzoma Care Corp.; Sanders Senior Care, Inc.; Diercks Senior Care, LLC; Weber Home Care Services, LLC; Solicitude, Inc.; Revere Care, Inc.; Buckskin 903 Ventures, LLC; GMW Solutions, LLC; RSGR, LLC; River Phoenix Health, LLC; Geocare, Inc.; Tailored Home Care, LLC; Meck, LLC; DITP Business Ventures, Inc.; Aubby, Inc.; Home Care for Seniors Massachusetts, Inc.; Commonwealth Senior Care, LLC; and Essex County Senior Care, LLC (collectively, the "plaintiffs")[1] allege

---

[1] The first paragraph of the Amended Complaint (Filing No. 57) and the opening paragraph of the plaintiffs' brief (Filing No. 64) lists JT4 Senior Care, LLC and JT4

defendant Home Instead, Inc. ("Home Instead") materially breached a March 18, 2024, Settlement Agreement and Release ("Settlement Agreement") between them by refusing to permit the plaintiffs to receive "an early renewal of their operative Franchise Agreements" (the "Franchise Agreements") with Home Instead. According to the plaintiffs, Home Instead has "[n]o doubt . . . reneged on the terms of the Settlement Agreement in order to circumvent Plaintiff's [sic] right to a five (5) [sic] auto-renewal and, in turn, impose the Care Platform upon Plaintiffs upon renewal."

Before the Court is Home Instead's Motion to Dismiss the plaintiffs' Amended Complaint for lack of subject-matter jurisdiction and failure to state a claim (Filing No. 59). *See* Fed. R. Civ. P. 12(b)(1), (6). The plaintiffs request a hearing so they can voice their opposition (Filing No. 65). For the reasons stated below, Home Instead's motion is granted in part and denied in part. The Court sees no need for a hearing.

## I.     BACKGROUND[2]

Home Instead is a Nebraska corporation with its principal place of business in Omaha. Through its network of franchisees, Home Instead "provides non-medical companionship and at-home health care assistance to seniors and others." Each plaintiff is a franchisee with a defined service territory in different parts of the country. Their respective Franchise Agreements expire "sometime after March 17, 2027."

In August 2021, Honor Technology, Inc. ("Honor") acquired a controlling interest in Home Instead from its founders. Honor uses a different business model for care (the "Care Platform") than the model the plaintiffs have traditionally used as Home Instead

---

Sarasota Care, LLC as plaintiffs. Both are also included in Exhibit 2 to the Settlement Agreement (Filing No. 53-2). But the Amended Complaint omits those two companies from the caption and the allegations that identify the plaintiffs in this case. The Court therefore disregards them.

[2]The factual background is primarily drawn from the Amended Complaint.

franchisees (the "traditional model").    In simple terms, the traditional model gave franchisees more autonomy and control of their businesses than the Care Platform.

Concerned about the changes, the "franchisees of Home Instead formed the Franchisee Association [(the "association")] in early 2022" as a means "to defend their rights."  In time, hostilities grew between Home Instead and the association.

In an effort to resolve the dispute, a large subgroup of associate members, the Zarco Group Members, and Home Instead participated in a mediation on March 18, 2024.  The session lasted almost fourteen hours.  It took another six weeks to convert the term sheet from the mediation into the Settlement Agreement.  The plaintiffs blame Home Instead for the delay, arguing it "attempted to re-write the language regarding Plaintiffs' right to a five (5) year auto-renewal of their Franchise Agreements in a manner that was inconsistent with negotiated language that was agreed upon between the parties at the Mediation and memorialized in the Binding Material Term Sheet."

Those rights are purportedly memorialized in Section 5.0 of the Settlement Agreement.  Titled **Existing Franchisees' Right to Renew**, that section provides the following:

> Home Instead agrees that franchise agreements executed within three (3) years of the Effective Date shall not include language granting Home Instead discretion over renewals. Home Instead further agrees that franchisees shall have a five (5) year auto-renewal as long as the franchisee is in good standing and meets the other material conditions set forth in the franchise agreement.

The Settlement Agreement became effective "as of March 18, 2024."  According to the plaintiffs, it "authorizes all Zarco Group Members to secure the benefits thereunder within a confined three-year period from [that date], or by no later than March 17, 2027."  They further assert that under Section 6.0 **Care Platform**, "Home Instead agreed that for a three (3) year[] period from the Effective Date, it would not require any franchisee that was not operating on the Care Platform to begin operating on the Care Platform."

3

In short, the plaintiffs argue that despite agreeing to provide them "the right to renew their existing Franchise Agreements," Home Instead has actively denied them that right. In response to Home Instead's assertion that only franchisees with agreements that expire before March 17, 2027, have a renewal right, the plaintiffs contend Home Instead "fails to identify any language which condition the Settlement Agreement's benefits—particularly [Section] 5.0—upon the expiration date of any current franchise agreement." The plaintiffs alternatively contend Section "5.0 is ambiguous at best given the parties' differing interpretations."

Unsatisfied with what they see as Home Instead's violation of their renewal rights, the plaintiffs filed suit on November 10, 2025, alleging breach of the Settlement Agreement and breach of the covenant of good faith and fair dealing (Filing No. 1). When Home Instead moved to dismiss on jurisdictional and substantive grounds (Filing No. 52), *see* Fed. R. Civ. P. 12(b)(1), (6), the plaintiffs amended their complaint (Filing No. 57) as a matter of course, *see* Fed. R. Civ. P. 15(a)(1)(B).

Given the plaintiffs' attempt to address at least "some of the issues Home Instead" raised, the Court denied the motion without prejudice as moot (Filing No. 58). The Court now considers Home Instead's renewed motion to dismiss (Filing No. 59). According to Home Instead, the "Amended Complaint does not cure a single jurisdictional or pleading defect identified in" its original motion.

II.    **DISCUSSION**

    A.    **Standards of Review**

        1.    **Rule 12(b)(1)**

Home Instead first argues the Court lacks subject-matter jurisdiction under § 1332(a)(1). *See* Fed. R. Civ. P. 12(b)(1). "It is axiomatic that a court may not proceed at all in a case unless it has jurisdiction." *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 764 (8th Cir. 2001) (clarifying that district courts "may not dismiss a case on the merits by hypothesizing subject-matter jurisdiction"). "The burden of proving federal

jurisdiction . . . is on the party seeking to establish it." *Great Rivers Habitat All. v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010).

A challenge to subject-matter jurisdiction under Rule 12(b)(1) can be either facial or factual. *See*, *e.g.*, *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a facial challenge, "the court restricts itself to the face of the pleadings," *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990), and "presumes all of the factual allegations concerning jurisdiction to be true." *Young Am. Corp. v. Affiliated Comput. Servs. (ACS), Inc.*, 424 F.3d 840, 843-44 (8th Cir. 2005).

"The plaintiff must assert facts that affirmatively and plausibly" establish federal jurisdiction. *Stalley v. Cath. Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007). The Court will dismiss "only if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Young*, 424 F3d. at 844.

A defendant makes a factual challenge by attacking "the veracity of the facts underpinning subject matter jurisdiction." *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018) (quoting *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009)). With a factual challenge, "the court considers matters outside the pleadings and the non-moving party does not have the benefit of [such Rule] 12(b)(6) safeguards." *Osborn*, 918 F.2d at 729 n.6 (internal citations omitted). The Court can "receive competent evidence such as affidavits, deposition testimony, and the like" as needed "to determine the factual dispute." *Titus*, 4 F.3d at 593.

### 2.      Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding such a motion, the Court can "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010)). Although the Court accepts the plaintiffs' factual allegations as true, that tenet does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678.

A complaint that alleges facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 557. To cross the line, the plaintiff must provide "sufficient factual information to provide" a basis for each claim "and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008).

### B.     Nebraska Law

Section 12.3 of the Settlement Agreement provides that Nebraska substantive law applies to "[a]ll questions pertaining to the validity, interpretation, or administration of this Agreement." The parties likewise rely on Nebraska law in their briefs. The Court follows their lead. *See Twin City Pipe Line Co. v. Harding Glass Co.*, 283 U.S. 353, 356 (1931) ("The general rule is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts."); *McKeage v. TMBC, LLC*, 847 F.3d 992, 1002 (8th Cir. 2017) (upholding the application of a contractual choice-of-law provision); *Rose v. Am. Fam. Ins. Co.*, 995 N.W.2d 650, 654 (Neb. 2023) (explaining "that the parties' choice of law will ordinarily govern").

## C.    Amount in Controversy

The plaintiffs invoke the Court's diversity jurisdiction under § 1332(a)(1).  That statute gives this Court "original jurisdiction of all civil actions" in which the amount in controversy exceeds $75,000 and the parties are "citizens of different States."  Home Instead contends the plaintiffs fail to allege the requisite amount in controversy.  *See id.*

The plaintiffs mention $75,000 twice in their amended complaint.  First, in alleging jurisdiction, they aver "the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs and is between citizens of different states."

Second, in describing their general allegations, they explain that "[b]y forcing Plaintiffs to release and forever discharge their respective legal claims, which were substantially in excess of $75,000.00 per Plaintiff at the time of the settlement, Plaintiffs have suffered substantial damages."  Their other references to damages in each cause of action state they "have suffered and continue to suffer substantial damages in an amount to be proven at trial."

Ordinarily, a plaintiff's good-faith allegation that "the jurisdictional amount" is met "will suffice to confer jurisdiction."  *Kopp v. Kopp*, 280 F.3d 883, 884 (8th Cir. 2002) (quoting *Larkin v. Brown*, 41 F.3d 387, 388 (8th Cir. 1994)).  "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).

"If the defendant challenges the plaintiff's allegations of the amount in controversy, then the plaintiff must establish jurisdiction by a preponderance of the evidence."  *Kopp*, 280 F.3d at 884.  Combining the "legal certainty" rule with that burden of proof, the Eighth Circuit has determined that a "district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000." *Id.* at 885.

7

Home Instead's jurisdictional challenge is a little hard to follow.  Most of the time, it makes a facial challenge; at others, it faults the plaintiffs for a lack of proof.  Sometimes it does both—in the same sentence.  For instance, in its reply brief (Filing No. 66), Home Instead argues, "Even if we assume (as we must for purposes of this Motion) that the *factual* allegations in Plaintiffs' Complaint are true (they are not), Plaintiffs have still failed to plead or prove by a preponderance of the evidence that the matter in controversy exceeds $75,000."  (Emphasis in original.)

But, as noted, the plaintiffs have specifically pleaded that the amount in controversy exceeds $75,000.  That is usually enough.  *See Kopp*, 280 F.3d at 884.  For all its protestations, Home Instead neither alleges bad faith, nor argues legal certainty, nor offers any probative evidence to challenge the plaintiffs' jurisdictional allegations.[3]  *See St. Paul*, 303 U.S. at 289; *Kopp*, 280 F.3d at 884-85.  It simply demands more-detailed "substantive allegations."

Though Home Instead "agrees that Plaintiffs are not required to provide detailed damages calculations at the pleading stage," it contends —without support—that "they are required to plead facts showing how they have actually been damaged and that the amount of such damage exceeds $75,000."  Even if not broadly at odds with binding precedent for jurisdictional purposes, Home Instead's position demands too much from the plaintiffs in

---

[3]On balance, Home Instead's challenge is more facial than factual.  It focuses on the plaintiffs' factual allegations rather than affidavits, documents, or other evidence, primarily arguing that their allegations are facially insufficient.  *See Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914-15 (8th Cir. 2015) (explaining that a facial attack questions whether the "plaintiff has sufficiently alleged a basis of subject matter jurisdiction," while a factual attack challenges "the existence of subject matter jurisdiction . . . in fact, irrespective of the pleadings" (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)); *BP Chemicals Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 680 (8th Cir. 2002) (treating a jurisdictional challenge as facial where the defendant's argument did "not draw upon facts presented in the evidentiary record" by "affidavits, testimony, and documentary materials").

these circumstances. *See St. Paul*, 303 U.S. at 289 (explaining jurisdiction is proper absent "a legal certainty that the claim is really for less than the jurisdictional amount").

This Court will not lightly dismiss for lack of subject-matter jurisdiction. *See Wheeler v. St. Louis Sw. Ry. Co.*, 90 F.3d 327, 329 (8th Cir. 1996); *Bowe v. Nw. Airlines, Inc.*, 974 F.2d 101, 103 (8th Cir. 1992) (explaining that dismissal on those grounds "should be granted sparingly and cautiously" unless "the facial attack shows there is no jurisdiction"). At this point, the Court finds that while the plaintiffs' specific allegations may be thin, they have adequately alleged the amount in controversy. *See Kopp*, 280 F.3d at 885-86 (finding diversity jurisdiction after cautioning courts not "to prejudge the monetary value of an unliquidated claim" (quoting *Zunamon v. Brown*, 418 F.2d 883, 887 (8th Cir. 1969))).

### D.    Failure to State a Claim

Home Instead fares better on the merits. Under Nebraska law, "[a] contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms." *Davenport Ltd. P'ship v. 75th & Dodge I, L.P.*, 780 N.W.2d 416, 422 (Neb. 2010). Home Instead argues the plaintiffs' breach-of-contract claims depend on early-renewal rights that "the plain and unambiguous language of the Settlement Agreement" does not give them. *See Gorog v. Best Buy Co.*, 760 F.3d 787, 793 (8th Cir. 2014) (concluding the plaintiff's "breach-of-contract claim [wa]s foreclosed by the plain language of the" contract). According to Home Instead, "[t]he fact that some franchisees, under the express terms of their existing franchise agreements with varying renewal dates, are not eligible to renew on or before March 17, 2027, does not create a breach of the Settlement agreement by Home Instead." *See Weber v. N. Loup River Pub. Power & Irrigation Dist.*, 854 N.W.2d 263, 273 (Neb. 2014) ("Non-occurrence of a condition is not a breach by a party unless he is under a duty that the condition occur." (quoting Restatement (Second) of Contracts § 225 (1981))).

9

As for the implied covenant of good faith and fair dealing, Home Instead asserts it "cannot be used to modify the express terms of the Settlement Agreement." *See Spanish Oaks, Inc. v. Hy-Vee, Inc.*, 655 N.W.2d 390, 400 (Neb. 2003) ("The scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract."). In its view, the plaintiffs impermissibly "seek to impose duties that do not arise from the" Settlement Agreement itself. *See id.* ("A violation of the covenant of good faith and fair dealing occurs only when a party violates, nullifies, or significantly impairs any benefit of the contract.").

In response, the plaintiffs allege Section 5.0 constitutes a promise from Home Instead "that franchise agreements executed by existing franchisees on or before March 17, 2027 would not grant [Home Instead] discretion over renewals and that franchisees shall have a five (5) year auto-renewal." As they see it, Home Instead materially breached Section 5.0 by conditioning their "acquisition of such promise upon expiration of their existing Franchise Agreements sometime after March 17, 2027."

They maintain that "there is no language whatsoever in the Settlement Agreement that conditions their right to renew by no later than March 17, 2027 only if their existing Franchise Agreement expires prior to such date." They contend Home Instead's proposed interpretation of Section 5.0 "is absurd and deprives [them] of the benefit of the bargain" they reached during mediation.

Failing that, the plaintiffs contend that the parties' conflicting interpretations of Section 5.0 create an ambiguity that requires parol evidence to resolve. *See David Fiala, Ltd. v. Harrison*, 860 N.W.2d 391, 397 (Neb. 2015) ("A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings."). According to the plaintiffs, the fact that Section 5.0 doesn't "expressly account for Plaintiffs varying expiration dates is a collateral fact which establishes the existence of a latent ambiguity" that the Court can resolve with "extrinsic evidence," including evidence of the parties' discussions during mediation. *See*

10

*Plambeck v. Union Pac. R.R.*, 509 N.W.2d 17, 20 (Neb. 1993) ("Although the language of a document may be clear and unambiguous, a latent ambiguity exists when collateral facts make the meaning of the contract uncertain.").

The plaintiffs last argue Home Instead's "refusal to exercise its discretion to extend the Settlement Agreement's benefits to Plaintiffs, namely, the right to renew pursuant to [Section 5.0], constitutes a violation of the implied covenant of good faith and fair dealing as it belies logic that Plaintiffs entered into a binding and enforceable agreement for which they are now precluded from securing any of its benefits." They again contend the language in Section 5.0 does not tie "existing franchisees' right to renew" to "the expiration date of their current operative franchise agreement."

After careful review of the Settlement Agreement and the parties' respective arguments, the Court finds Home Instead's motion to dismiss for failure to state a claim should be granted. *See* Fed. R. Civ. P. 12(b)(6). Put simply, the Court agrees with Home Instead that the plaintiffs are trying to create contract rights and duties (or at least an ambiguity) where none exist. The plaintiffs also fail to state a plausible claim for breach of the covenant of good faith and fair dealing under Nebraska law.

In light of the foregoing,

IT IS ORDERED:
1. The plaintiffs' request for a hearing (Filing No. 65) is denied.
2. Defendant Home Instead, Inc.'s Motion to Dismiss the plaintiffs' Amended Complaint (Filing No. 59) is granted in part and denied in part as set forth above.
3. This case is dismissed with prejudice for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).
4. The Court will enter a separate judgment.

8:25-cv-00654-RFR-RCC   Doc # 67   Filed: 04/02/26   Page 12 of 12 - Page ID # 267

Dated this 2nd day of April 2026.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge

12